UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-08594-MWC-BFM Date: April 30, 2026

Title: Eric Alton *et al.* v. United American Indian Involvement, Inc. *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION WITH LEAVE TO AMEND; DENYING AS MOOT DEFENDANTS' MOTION TO STAY (DKTS. [49], [50])**

Before the Court are three motions. The first is Defendants United American Indian Involvement, Inc., Hope Craig-Corlew, and the United American Indian Involvement Foundation, Inc.'s (collectively, "Defendants")[1] motion to dismiss Plaintiffs Eric Alton, Jamie Ishcomer-Aazami, and Kevin Koko's (collectively, "Plaintiffs") First Amended Complaint ("FAC"). *See* Dkt. # 49 ("*MTD*"). In the same filing, Defendants ask the Court to compel arbitration on Plaintiff's retaliation claim. *See id.* The last motion is Defendants' motion to stay the case pending a ruling on the motions to dismiss and compel. *See* Dkt. # 50 ("*Mot. to Stay*"). Plaintiffs filed untimely oppositions to the motions,[2] *see* Dkts. # 58 ("*MTD Opp'n*"); 59 ("*Stay Opp'n*"), and Defendants replied, *see* Dkts. # 60 ("*MTD Reply*"); 61 ("*Stay Reply*"). The Court finds these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. After considering the papers,

[1] Plaintiffs also sue various "Doe Defendants." Plaintiffs allege that these individuals are responsible for some or all of the acts alleged in the FAC.

[2] On April 14, 2026, after Plaintiffs missed their deadline to file oppositions, Plaintiffs filed an *ex parte* application asking the Court for leave to file a second amended complaint or, in the alternative, for the Court to continue the hearing on Defendants' motions. *See* Dkt. # 52. On April 17, 2026, the Court denied Plaintiffs' application. *See* Dkt. # 54. Because consideration of Plaintiffs' untimely opposition filings does not change the Court's conclusion, the Court references them below.

the Court **GRANTS** Defendants' motion to dismiss **WITH LEAVE TO AMEND** and **DENIES AS MOOT** Defendants' motions to compel arbitration and to stay the case.

I. Motion to Dismiss

A. Background

This case arises out of Defendants' alleged fraud in connection with receipt of federal funds. *See* Dkt. # 45 ("*FAC*"). The FAC alleges as follows:

Plaintiffs are former employees of United American Indian Involvement, Inc. ("UAIII"). *See id.* ¶ 1. Plaintiffs "complained internally and reported externally the conduct alleged" in the complaint, resulting in their termination. *See id.* Plaintiffs "discovered that Defendants were jointly engaging in fraudulent activity," including falsification of documents, embezzlement, and misappropriation of government funds. *See id.* UAIII is a nonprofit organization focused on Native American health and welfare. *See id.* ¶¶ 2, 20. The United American Indian Involvement Foundation, Inc. ("UAIII Foundation") is a "sham corporation utilized by the Defendants" to misappropriate funds. *See id.* Hope Craig-Corlew is the "effective owner and the chairperson" of UAIII. *See id.* Ms. Craig-Corlew's operation of UAIII is "such that there is no distinction" between her and UAIII or the UAIII Foundation. *See id.* As Board Chairwoman and President of UAIII, Ms. Craig-Corlew "oversees senior leadership, ensuring operational excellence, and adherence to fiduciary and regulatory responsibilities." *See id.* ¶ 21. Ms. Craig-Corlew established the "UAII Foundation Inc. as a separate entity . . . to divert UAII funds for personal gain." *See id.* ¶ 27.

Defendants received federal funding through grants and contracts from United States agencies "for the purposes of providing services and programs for . . . Native American populations." *See id.* ¶ 7. But Defendants "misused, diverted, and falsely accounted for the funds while submitting claims and certifications to the federal government representing" that Defendants had properly used the funds. *See id.* Defendants also attempted to "conceal, cover-up and defraud the United States . . . ." *See id.* ¶ 12.

On September 6, 2024, Plaintiff Jamie Ishcomer-Aazami sent a letter to the UAIII Board of Directors "expressing her concerns" regarding Defendants' "fraudulent and improper conduct . . . ." *See id.* ¶ 14. Ms. Ishcomer-Aazami wrote that "UAIII operates primarily off of federal dollars," and that nonprofits "must follow specific procurement

procedures to ensure fairness, competition, and integrity in the use of federal funds. This includes[] competitive procurement practices, avoiding conflicts of interest, ensuring that procurement processes are conducted transparently, and maintaining records and documenting decisions." *See id.* ¶ 15. Plaintiffs also incorporate that letter by reference, which identifies various instances of nepotism, including: the hiring of Ms. Craig-Corlew's son as a content creator; the hiring of Ms. Craig-Corlew's niece as Director of Business Development; the hiring of Ms. Craig-Corlew's sister-in-law as Childcare Director; and the hiring of Ms. Craig-Corlew's "close friend" as the Board Executive Assistant. *See* Dkt. # 45-1. The letter notes that the hiring processes failed to follow the proper procedures. *See id.* Ms. Ishcomer-Aazami's letter also identifies various shortcomings in Ms. Craig-Corlew's direction of day-to-day operations and UAIII's noncompliance with its bylaws. *See id.* The letter states that "[t]here have been instances of retaliation" and "conflicts of interest." *See id.* And Ms. Ishcomer-Aazami identifies three examples of misappropriation of organizational funds: requiring co-CEO William Lowe "to travel from Oklahoma to LA 3 days every week"; "[c]ountless trips paid for by UAII" that "do not directly relate to the organization's mission"; and the "UAII gala bringing in countless individuals from Oklahoma for [Ms. Craig-Corlew's] own personal benefit." *See id.*

Since 1997, UAIII has received over $40 million from the Indian Health Service ("IHS") and the Department of Health and Human Services ("HHS"). *See FAC* ¶ 20. IHS funding has exceeded approximately $4.5 million since 2021. *See id.* ¶ 24. In addition to receiving federal funding, UAIII has received funding from other sources, which "Defendants have comingled and combined . . . in an effort to defraud grantees and donors . . . ." *See id.* ¶ 22. Defendants have not used federal funds on the projects for which the federal government granted them. *See id.* ¶ 24. "An audit by IHS revealed evidence of waste, abuse, and conflicts of interest, leading to the risk of non-renewal of three federal grants" totaling $3.3 million. *See id.* ¶ 25. "In response to the audit findings, IHS outlined corrective actions, including a recommendation to remove the entire Board of Directors," but Defendants did not comply with those recommendations. *See id.* ¶¶ 25–26. Some of UAIII's misappropriation includes: "[p]ayments totaling $107,000 to Ms. Craig-Corlew for consulting services through UAII Foundation Inc., despite her serving concurrently as Board Chairwoman of both entities"; "[e]xcessive monthly stipends, meeting fees averaging $5,000 and credit card expenditures averaging between $10,000 and $15,000"; "[e]xcessive travel and leisure expenses"; and "[t]ransfers of funds to Defendant UAIII Foundation." *See id.* ¶ 28. Defendants also used federal funding to create the "sham employment positions" for Ms. Craig-Corlew's family members and friends.

*See id.* ¶ 29. Defendants overpaid Ms. Craig-Corlew's family and friends using federal funds "without having [those individuals] qualify for vendor opportunities." *See id.* ¶ 30.

Regarding the "sham positions" for Ms. Craig-Corlew's loved ones, Defendants' policies require UAIII to follow a specific process to create a position. *See id.* ¶ 31. Though the HR Department is "responsible for processing recruitment procedures and posting the job in relevant locations, . . . [n]one of those procedures occurred." *See id.* The purpose of the "sham positions" was to divert federal funding from their intended projects to Ms. Craig-Corlew's loved ones. *See id.* ¶ 32. Still, Defendants reported the "sham positions" to the federal government "as if such positions were . . . occupied by persons involved" with the relevant projects. *See id.* ¶ 33. Ms. Craig-Corlew also diverted federal funds from UAIII to the UAIII Foundation. *See id.* ¶ 34. Defendants represented to the federal government "that vendors and contractors who received monies from the Projects would be properly screened, vetted and held accountable," but Defendants failed to do so. *See id.* ¶ 35. Moreover, UAIII and Ms. Craig-Corlew "re-wrote the corporate by-laws, obviated company policies," and "intentionally failed to comply with IHS standards in an effort to remove" oversight regarding the funds' use. *See id.* ¶ 36. Defendants used some of the funds to buy gift cards and provide money to Ms. Craig-Corlew's loved ones for "housing, upgraded housing, etc." *See id.* ¶ 37. The funds also "cover[ed] unapproved and improper travel expenses for first-class flights, high-end travel accommodations, rental cars, and other personal expenses." *See id.* ¶ 38.

To conceal their activities, Defendants submitted falsified financial reports and inaccurate accounting records to the federal government. *See id.* ¶ 43. Defendants also certified "compliance with program requirements" even though they had failed to do so. *See id.* ¶ 45. Because Defendants "avoided obligations to return federal funds obtained through false representations," "Defendants . . . are indebted for such Reverse False Claims in an amount believed to be in excess of" $250,000. *See id.* ¶ 50.

The FAC lists six "causes of action": (I) a general violation of the False Claims Act; (II) a claim for an accounting; (III) a claim for false certification fraud under the False Claims Act; (IV) a claim for conspiracy to commit false certification fraud under the False Claims Act; (V) a claim for whistleblower retaliation under the False Claims Act; and (VI) a claim for appointment of a receiver. *See id.* at 23–33.

In addition to equitable relief for an accounting and appointment of a receiver, Plaintiffs seek treble damages, including for "retaliation, . . . double back pay,

reinstatement where appropriate, and compensation for special damages." *See id.* at 34. Because Plaintiffs brought their claims as relators under the False Claims Act, they ask for "the maximum relator's share permitted by law . . . ." *See id.* Lastly, Plaintiffs seek punitive damages from Defendants. *See id.* at 35.

Plaintiffs first filed this action as relators on October 7, 2024. *See* Dkt. # 1. After several extensions, the United States declined to intervene on December 12, 2025. *See* Dkt. # 27.

B. Legal Standard

Rule 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). Pleadings that are "verbose, confusing and conclusory" are subject to dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements[] do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity,

the pleader must state the false representations' time, place, and specific content. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). A pleader must "'identify the who, what, when, where, and how of the misconduct charged . . . .'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to adequately answer the fraud allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

C. Discussion

*i. False or Fraudulent Claims*

An individual is liable under the False Claims Act if they "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval," or "knowingly make[], use[], or cause[] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). "A 'claim' includes direct requests for government payment as well as reimbursement requests made to the recipients of federal funds under a federal benefits program." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (citing 31 U.S.C. § 3729(b)(2)(A)). To bring a claim under the False Claims Act, one must show "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

"It is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the [False Claims Act]." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996). A false claim is the "*sine qua non* of receipt of state funding," *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), and a plaintiff "must show *an actual false claim* for payment being made to the Government." *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (emphasis in original) (internal quotation marks and citation omitted).

Plaintiffs fail to identify any claims that Defendants made to the government. The FAC appends a list of all funds IHS provided to UAIII since 1997. *See* Dkt. # 45-2. But that list shows only the award number, award title, "action date," and "action amount." *See id.* Lacking from that list is any indication as to what Defendants submitted to the government. To be sure, since Defendants received federal funding, there is little doubt that Defendants submitted claims to the government. But the Court cannot evaluate whether those claims were false when Plaintiffs do not identify what the claims were. *See, e.g.*, *United States v. 1850 Bryant Land LLC*, No. 21-cv-05742-RS, 2023 WL 4297585, at *3 (N.D. Cal. June 30, 2023) ("While a relator need not disclose each and every instance of a false claim being submitted to the government, they must nonetheless disclose the fraud with some level of specificity . . . ." (internal quotation marks and citation omitted)).

Though the Ninth Circuit allows a plaintiff to "allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted," *Ebeid*, 616 F.3d at 998–99, Plaintiffs still fall short. Plaintiffs highlight various general uses of allegedly misappropriated funds. *See MTD Opp'n* at 6. Beyond the lack of specificity in allegations as to the use of those funds, the Court cannot determine whether Defendants utilized funds for an unauthorized purpose when it does not know what purposes the government authorized. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) ("Indeed, the pleading does not point to a single invention for the use of which [Defendant] charged the United States. This type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude." (citation omitted)). The same is true of Plaintiffs' reference to "sham vendors" and underqualified hires—without any detail as to what Defendants represented to the government, the FAC does not allege a violation of the False Claims Act. *See, e.g.*, *United States ex rel. Williams v. Med. Support L.A.*, No. SA CV 20-0198-CBM-(DFMx), 2021 WL 6104016, at *8 (C.D. Cal. Nov. 29, 2021) (identifying that "because the FAC does not allege any false claims in any specific detail nor identify any representative examples of false claims, Relator fails to state a claim for violation of the [False Claims Act] based on nonconforming services in connection with [Defendant's] staff allegedly editing reports"); *see also United States v. Honeywell Int'l*, No. LA CV12-02214 JAK (JCGx), 2014 WL 12579803, at *3 n.5 (C.D. Cal. Jan. 24, 2014) ("Here, the FAC is deficient because it does not identify with particularity those who allegedly made knowingly fraudulent representations to the Government.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-08594-MWC-BFM Date: April 30, 2026

Title: Eric Alton *et al.* v. United American Indian Involvement, Inc. *et al.*

Without more, Plaintiffs have not pled the "who, what, when, where, and how" of the alleged misconduct. *See Gonzalez v. Am. Honda Motor Co., Inc.*, 720 F. Supp. 3d 833, 840 (C.D. Cal. 2024) (citation omitted); Fed. R. Civ. P. 9(b) (noting that a claim sounding in fraud must "state with particularity the circumstances constituting fraud or mistake"). Plaintiffs argue that the Court should not apply the heightened pleading standard of Rule 9(b) because the "pertinent information is exclusively within [Defendants'] knowledge or possession." *See MTD Opp'n* at 8. But Plaintiffs' justification is that "such [an] exception is warranted as Defendants have been provided sufficient information to prepare a defense." *See id.* Stated differently, Plaintiffs' only argument is that because the FAC puts Defendants on notice of their alleged misconduct generally, Rule 9(b) should not apply. *See id.* But this justification does not speak to the actual standard for an exception to Rule 9(b), which requires an explanation as to why the relevant information is exclusively within Defendants' knowledge or possession. *See Beshears v. Provident Life and Acc. Ins. Co.*, No. CV-07-00292-PHX-DGC, 2007 WL 1438738, at *2 (D. Ariz. May 15, 2007) (noting that "Plaintiff's complaint does not allege that Defendants have exclusive control of information Plaintiff needs to plead his claim, a necessary allegation under his own cases." (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992))); *cf. Taragan v. Nissan N. Am.*, No. C 09-3660 SBA, 2013 WL 3157918, at *6 (N.D. Cal. June 20, 2013) ("To comport with Rule 9(b), a plaintiff alleging the existence of a duty to disclose must offer specific substantiating facts demonstrating that the defendant has exclusive knowledge about an alleged defect—not merely that the defendant has a superior understanding about the product's design generally." (internal quotation marks and citation omitted)). Without more, the Court cannot contravene the express language of the Federal Rules.

Because the FAC fails to plead a false statement or fraudulent course of conduct, the Court need not reach the other elements under the False Claims Act. *See U.S. ex rel. Haw. v. Haw. Pac. Health*, 409 Fed. Appx. 133, 134 (9th Cir. 2010) ("Because Relators have failed to establish the existence of any false claim or fraudulent conduct, their claims under the [False Claims Act] must fail." (citing *Hendow*, 461 F.3d at 1171, 1174)).

*ii. Retaliation Claim*

"The False Claims Act protects 'whistle blowers' from retaliation by their employers." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 845 (9th Cir. 2002). An employee is entitled to relief if that employee is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" based on their whistleblowing conduct. *See* 31 U.S.C.

§ 3730(h)(1). An employee must prove three elements to prevail on a False Claims Act retaliation claim: "(1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity." *Moore*, 275 F.3d at 845.

The FAC fails to mention the actions of Mr. Alton and Mr. Koko. *See generally FAC*. Accordingly, the Court cannot conclude that they engaged in protected activity under the False Claims Act. Ms. Ishcomer-Aazami's letter details that she ceased working as Acting COO on September 4, 2024. *See* Dkt. # 45-1. Ms. Ishcomer-Aazami sent her letter on September 6, 2024, and—even assuming *arguendo* that Defendants could have retaliated after Ms. Ishcomer-Aazami was no longer Acting COO—the FAC fails to identify any retaliatory act that Defendants took after that date. *See generally FAC*. Nor does the FAC identify any other reporting that Ms. Ishcomer-Aazami did before September 4, 2024. *See generally id.* Without specific allegations as to what retaliatory actions Defendants took against Ms. Ishcomer-Aazami, Plaintiffs cannot maintain a claim for retaliation under the False Claims Act. *See Lillie v. ManTech Int'l Corp.*, 837 Fed. Appx. 455, 457 (9th Cir. 2020) (restating requirements for retaliation claim under False Claims Act).

*iii. Conspiracy Under False Claims Act*

Plaintiffs' claim for conspiracy under the False Claims Act likewise fails. Where there is no principal False Claims Act violation, there cannot be a claim for conspiracy under the False Claims Act. *See Haw. ex rel. Torricer v. Liberty Dialysis-Haw. LLC*, 512 F. Supp. 3d 1096, 1118 (D. Haw. 2021) ("Counts Four and Eight allege conspiracy to violate the [False Claims Act] in violation of the Hawaii [False Claims Act] and federal [False Claims Act]. These Counts fail to state claims because the court has found no violations of the [False Claims Act] in the first instance—there can be no conspiracy to violate the [False Claims Act] if no false and material claims were submitted." (citation and footnote omitted)); *U.S. ex rel. Woodruff v. Haw. Pac. Health*, 560 F. Supp. 2d 988, 1004 (D. Haw. 2008) ("Because the court concludes that Defendants did not submit false claims based on the UB–92s, Plaintiffs' conspiracy claim fails. Absent evidence of a false claim as alleged, Defendants did not conspire to have a false claim paid by the United States." (citation omitted)). Accordingly, the Court must dismiss Plaintiffs' conspiracy claim under the False Claims Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-08594-MWC-BFM Date: April 30, 2026

Title: Eric Alton *et al.* v. United American Indian Involvement, Inc. *et al.*

*iv. Requests for Equitable Relief*

The Court must dismiss Plaintiffs' requests for an accounting and the appointment of a receiver because they are untethered to a surviving claim. "A request for a legal accounting must be tethered to relevant actionable claims." *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009); *see, e.g.*, *Rodriguez v. Bank of N.Y. Mellon*, No. 13cv1830-GPC-BLM, 2014 WL 229274, at *12 (S.D. Cal. Jan. 17, 2014) ("Because each of Plaintiff's substantive claims for relief are subject to dismissal, Plaintiff has not anchored her request to any viable claims and her accounting claim cannot survive." (internal quotation marks and citation omitted)).

The same is true of Plaintiffs' request for a receiver. Though there is "no precise formula for determining when a receiver may be appointed," *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009), there are several factors a court may consider. Those include:

> (1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1259 (D. Or. 2009) (cleaned up).

Plaintiffs have not established that any of these factors are present. The Court has already determined that the FAC does not state a valid claim. *See supra* Section I.C.i. The Court likewise cannot conclude that there is fraudulent conduct or the probability of fraudulent conduct. And the FAC's allegations that "Defendants will continue to dissipate federal grant funds," *see FAC* at 31–32, are insufficiently specific to determine that the

property is in imminent danger of being lost or that legal remedies would be inadequate. *See generally FAC*. Plaintiffs do not explain why the harm of failing to appoint a receiver would outweigh the injury to Defendants, nor do Plaintiffs clearly define their risk of ongoing injury. *See generally id.*; *MTD Opp'n*. Given the Court's dismissal of the FAC, it is not clear that Plaintiffs will likely succeed in the action. "Appointing a receiver is an extraordinary remedy that should not be granted unless the party seeking the receiver has met its burden of showing that a receiver is necessary." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1262 (citing *Canada Life*, 563 F.3d at 845). Because Plaintiffs fail to carry their burden, the Court must dismiss the FAC's receivership request.

*v. Determination*

For these reasons, the Court **GRANTS** Defendants' motion to dismiss all claims.

D. Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In the Ninth Circuit, courts should grant leave to amend with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citation omitted). Here, it is not clear that amendment would be futile, especially since this is the first time the Court has analyzed Plaintiffs' claims. For that reason, and considering the Ninth Circuit's guidance, the Court **GRANTS** leave to amend all claims.

II. Motion to Compel

Defendants also ask the Court to compel Plaintiffs' retaliation claim to arbitration. *See MTD* at 19–20. Because the Court has already dismissed Plaintiffs' retaliation claim, Defendants' request to compel arbitration is moot. *See, e.g.*, *Lansmont Corp. v. SPX Corp.*, No. 5:10-cv-05860 EJD (HRL), 2011 WL 2463281, at *6 n.5 (N.D. Cal. June 20, 2011) ("In light of the court's ruling on the companion motion to dismiss, [Defendant's] request to compel arbitration as to those claims is moot at this time."); *Dell Inc. v. Alvarez*, No. C

06-05928 JSW, 2007 WL 608116, at n.3 (N.D. Cal. Feb. 23, 2007) ("Because the Court has ordered that the case be dismissed, [Defendant's] motion to compel arbitration is moot and need not be addressed."). Accordingly, the Court **DENIES AS MOOT** Defendants' motion to compel arbitration.

III. Motion to Stay

Defendants also ask the Court to stay discovery while Defendants' motions to dismiss and compel are pending. *See generally Mot. to Stay*. Because the Court has ruled on Defendants' motions to dismiss and compel, Defendants' motion to stay is moot. *See, e.g.*, *Constr. Laborers Pension Tr. v. Meketa Inv. Grp., Inc.*, No. 2:23-cv-07726-CAS (PVCx), 2024 WL 1656261, at *7 (C.D. Cal. Apr. 15, 2024). Thus, the Court **DENIES AS MOOT** Defendants' motion to stay.

IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss **WITH LEAVE TO AMEND** and **DENIES AS MOOT** Defendants' motions to compel arbitration and stay the case. If Plaintiffs wish to file an amended complaint, they must do so by end of day on May 22, 2026. The May 1, 2026, hearing is **VACATED**.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ