UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-08594-MWC-BFM Date: July 16, 2026

Title: Eric Alton *et al.* v. United American Indian Involvement, Inc. *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: N/A | Attorneys Present for Defendants: N/A |

**Proceedings: (IN CHAMBERS) THE COURT GRANTS DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND; DENIES AS MOOT DEFENDANTS' MOTION TO COMPEL ARBITRATION; DENIES AS MOOT DEFENDANTS' MOTION TO STAY; AND DENIES AS MOOT PLAINTIFFS' REQUEST FOR REMOTE APPEARANCE (DKTS. [66], [67], [73]) JS-6**

Before the Court are several motions. First, Defendants United American Indian Involvement, Inc., Hope Craig-Corlew, and the United American Indian Involvement Foundation, Inc. (collectively, "Defendants") filed a motion to dismiss the Second Amended Complaint ("SAC"). Dkt. # 66 ("*Mot.*"). In the same filing, Defendants move to compel arbitration of the SAC's retaliation claim. *See id.* Plaintiff-Relators Eric Alton, Jamie Ishcomer-Aazami, and Kevin Koko (collectively, "Plaintiffs") opposed the motions to dismiss and to compel arbitration, Dkt. # 70 ("*Opp'n*"), and Defendants replied, Dkt. # 71 ("*Reply*"). Defendants also filed a motion to stay the case pending a ruling on the motions to dismiss and compel. Dkt. # 67 ("*Mot. Stay*"). Plaintiffs did not oppose. *See* Dkt.

The matters are appropriate for decision without oral argument, and the hearing on the motions is **VACATED**. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.[1] After considering the papers, the Court **GRANTS** Defendants' motion to dismiss the SAC **WITHOUT LEAVE TO AMEND** and **DENIES AS MOOT** Defendants' motions to compel arbitration and to stay the case.

[1] Therefore, Plaintiffs' request for remote appearance is **DENIED AS MOOT**. Dkt. # 73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-08594-MWC-BFM Date: July 16, 2026

Title: Eric Alton *et al.* v. United American Indian Involvement, Inc. *et al.*

I. Background

A. Factual Background

This case arises out of Defendants' alleged fraud in connection with receiving federal funds. *See generally* Dkt. # 63 ("*SAC*"). Plaintiffs Eric Alton, Jamie Ishcomer-Aazami, and Kevin Koko bring this qui tam action on behalf of the United States under the False Claims Act ("FCA"). *See id.* The SAC alleges as follows:

Each plaintiff is a former, executive-level employee of Defendant United American Indian Involvement, Inc. ("UAIII"), a non-profit organization focused on Native American health and welfare. *Id.* ¶¶ 1–2, 20.[2] Defendant United American Indian Involvement Foundation, Inc. ("UAIIF") is a sham corporation Defendants used to misappropriate funds. *Id.* ¶ 2. Defendant Hope Craig-Corlew is the Board Chairwoman and President of UAIII. *Id.* Craig-Corlew oversees senior leadership of UAIII, and her operation of UAIII is such that there is no distinction between her and UAIII or UAIIF. *Id.* ¶¶ 2, 21.

Defendants received federal funding through grants and contracts from United States agencies for the purpose of providing services and programs for Native American populations. *Id.* ¶ 7. Since 1997, UAIII has received over $40 million from the Indian Health Service ("IHS") and the Department of Health and Human Services ("HHS"). *Id.* ¶ 20. Since 2021, IHS funding for UAIII has exceeded $4.5 million. *Id.* ¶ 24.

During their employment, Plaintiffs each discovered a longstanding scheme through which Defendants jointly engaged in various fraudulent activities to misuse federally funded grant money and misappropriate company funds. *Id.* ¶ 1(c). [3]

**Defendants' scheme of unlawful conduct**

First, Defendants mismanaged federal funds set aside for specific programs and projects intended to benefit the local Native American communities supported by UAIII. *Id.* ¶ 24; *see id.*, Schedule 1. An audit by IHS revealed evidence of waste, abuse, and

[2] This citation refers to the second paragraph numbered 20 in the SAC.

[3] Besides federal funding, UAIII has also received funding from other sources, such as private foundations and state and county agencies, which Defendants have comingled and combined in an effort to defraud grantees and donors. *Id.* ¶ 22 (citing *id.*, Ex. C).

conflicts of interest, leading to the risk of non-renewal of three federal grants totaling $3.3 million. *Id.* ¶ 25. In response to the audit findings, IHS outlined corrective actions, including a recommendation to remove the entire Board of Directors and provide a complete listing of new board members' names, resumes, and qualifications. *Id.* ¶ 25, Ex. D. Defendants did not comply with IHS's demand to have the Board step down. *Id.* ¶ 26. As a result, UAIII lost one or more of its IHS contracts to another urban Indian organization, lost its status as a Federally Qualified Health Center, and was unable to bill Medi-Cal for services rendered. *Id.*

Second, Defendants misappropriated UAIII's funds by making "[p]ayments totaling $107,000 to Ms. Craig-Corlew for consulting services through UAII Foundation Inc., despite her serving concurrently as Board Chairwoman of both entities"; "[e]xcessive monthly stipends, meeting fees averaging $5,000 and credit card expenditures averaging between $10,000 and $15,000"; "[e]xcessive travel and leisure expenses"; and "[t]ransfers of funds to Defendant UAIII Foundation." *Id.* ¶ 28. These actions occurred between March 2022 and November 2025, and "Defendants are in sole possession of documentation illustrating the precise date(s) of such conduct and [identifying] who the recipient(s) and participant(s) in this portion of the Scheme [are]." *See id.*

Third, Craig-Corlew and UAIII made material misrepresentations to IHS about the amounts, needs and intended use of the funds on the required forms for each Program and grant illustrated on Schedule 1, attached to the Complaint. *Id.* ¶ 44. UAIII received multi-year funding from IHS between October 7, 2019 and October 7, 2025, in the following approximate amounts per year: $1,684,279.00 in 2019; $1,781,680.00 in 2020; $2,129,028.00 in 2021; $2,995,019.00 in 2022; $3,301,360.00 in 2023; $2,143,568.00 in 2024; and $919,547.00 in 2025. *Id.* ¶ 40.[4] For each Project awarded to UAIII, "Defendants were first required to submit the following forms to IHS: SF-424 federal application

[4] There are some inconsistencies between this allegation and Schedule 1. Although Plaintiffs list the same total amounts that appear in Schedule 1, Schedule 1 includes amounts from other federal funding sources, such as the CDC and SAMHSA (Substance Abuse and Mental Health Services Administration). *See SAC*, Schedule 1. For example, the SAC alleges the total amount of funding for 2019 was $1,684,279.00; however, Schedule 1's total of $1,684,278.00 includes funding from not only IHS but the CDC and SAMHSA. *See id.* Additionally, the SAC alleges Defendants made material misrepresentations in connection with each Project and grant listed in Schedule 1, *see id.* ¶¶ 44, 46–47, 49, 52; however, Schedule 1 includes other federal funding sources and IHS funding from 2026, *see SAC,* Schedule 1.

forms[,] Budget information forms[,] Narrative proposal[,] Detailed line-item budget[,] Tribal resolutions/support letters[,] Proof of nonprofit or tribal status[,] Board member information[,] Financial statements/audit reports[, and] Staffing plan and resumes[.]" *Id.* ¶ 42. UAIII and Craig-Corlew created and submitted to IHS the following budget documents: "Personnel costs," "Fringe benefits," "Equipment," "Supplies," "Travel," "Contractors," "Indirect costs," and "Other expenses." *Id.* ¶ 43. Craig-Corlew and UAIII;s misrepresentations to HIS included overstating personnel and contractor needs and costs and including false statements and inflated amounts above the actual intended rates of pay for each Project in Schedule 1. *Id.* ¶¶ 44, 47. Defendants knew their intent was to defraud the U.S. Government and retain the excess funds for their benefit. *Id.* ¶ 45. During each Project, Defendants submitted additional documents to IHS, including "various financial reports, program/performance reporting and closeout and audit reporting." *Id.* ¶ 48. Defendants "continued to inflate and falsify budgets, expenditures and misrepresent the use of funds received" in connection with each Project to support their false statements. *Id.* ¶¶ 48, 49. Defendants and IHS possess the documents that contain budget misrepresentations. *Id.*

Fourth, Defendants represented to the federal government "that vendors and contractors who received monies from the Projects would be properly screened, vetted and held accountable," but Defendants failed to do so. *Id.* ¶ 33, 35. Instead, funds from IHS and other agencies were diverted by Defendants paying and over-paying Defendant Hope Craig-Corlew's family members and friends in "sham positions," without having them qualify for vendor opportunities. *Id.* ¶¶ 30, 35. Defendants' policies require UAIII to follow a certain process to create a position wherein the HR Department is "responsible for processing recruitment procedures and posting the job in relevant locations." *Id.* ¶ 31. None of those procedures occurred. *Id.* UAIII and Craig-Corlew "re-wrote the corporate by-laws, obviated company policies," and "intentionally failed to comply with IHS standards in an effort to remove" oversight regarding the funds' use. *Id.* ¶ 36. The federal funding diverted from intended projects to Craig-Corlew's loved ones covered their housing, upgraded housing, and First Class travel with luxury accommodations, rental cars, and other personal expenses. *Id.* ¶¶ 32, 37, 38, 54. These acts occurred "on various dates during the pendency of each applicable Project as referenced in Schedule 1," *id.* ¶¶ 33−35, 37, but "documentation illustrating the precise date(s) of such conduct[s] and [identifying] who the recipient(s) and participant(s) in this portion of the Scheme [are]" is solely within Defendants' possession. *Id.*

Fifth, Defendants submitted reports for each Project containing information regarding "the number of Native patients or participants served, the nature and extent of services delivered, periodic progress toward objectives, outcome measurements, staffing updates, community impact, challenges/barriers, corrective actions and success stories or measurable improvements (the Metric Reports)." *Id.* ¶ 50. However, Defendants manipulated these Metric Reports "to overstate the extent, reach and success of each Project, substantiate the need for additional money from IHS and cover-up the unlawful and fraudulent retention of excessive amounts on a per Project basis." *Id.* ¶ 51.

In sum, Defendants "misused, diverted, and falsely accounted and reported uses for the funds while submitting claims and certifications to the federal government representing" that Defendants had properly used the funds. *Id.* ¶ 7.

Since January 2024, Defendants continued engaging in conduct "nearly identical" to the scheme described above, in connection with other grants from Los Angeles County and the United States. *Id.* ¶ 56. Only Defendants possess the documents evidencing these alleged actions. *See id.* ¶¶ 55−56.

**Defendants' retaliation against Plaintiffs**

Each plaintiff complained internally and reported externally the conduct alleged in the SAC. *Id.* ¶ 1(a).

On September 6, 2024, Plaintiff Ishcomer-Aazami sent a letter to the UAIII Board of Directors expressing her concerns regarding Defendants' "fraudulent and improper conduct. *Id.* ¶ 14. In her letter, incorporated by reference into the SAC, Ishcomer-Aazami wrote that "UAIII operates primarily off of federal dollars," and that nonprofits "must follow specific procurement procedures to ensure fairness, competition, and integrity in the use of federal funds. This includes[] competitive procurement practices, avoiding conflicts of interest, ensuring that procurement processes are conducted transparently, and maintaining records and documenting decisions." *Id.* ¶ 15. The letter identifies instances of nepotism, including the hiring of Craig-Corlew's son as a content creator, Craig-Corlew's niece as Director of Business Development, Craig-Corlew's sister-in-law as Childcare Director, and Craig-Corlew's friend as the Board Executive Assistant, all without following the proper procedures. *See SAC*, Ex. A. The letter identifies shortcomings in Craig-Corlew's direction of day-to-day operations and UAIII's noncompliance with its bylaws and states "[t]here have been instances of retaliation" and

"conflicts of interest." *See id.* And the letter identifies several examples of misappropriation of organizational funds: requiring co-CEO William Lowe "to travel from Oklahoma to LA 3 days every week"; "[c]ountless trips paid for by UAII[I]" that "do not directly relate to the organization's mission"; and the "UAII[I] gala bringing in countless individuals from Oklahoma for [Craig-Corlew's] own personal benefit." *Id.*

In response to Plaintiffs undertaking to "advise, caution, warn, and ultimately report" the unlawful conduct, both internally among Defendants and externally to the appropriate governmental agencies affected and defrauded, Defendants retaliated against each Plaintiff and attempted to abridge their First Amendment rights by issuing "cease and desist letters," *id.* ¶ 13, and terminating their employment, *id.* ¶ 1(a), 94.

B. Procedural History

On October 7, 2024, Plaintiffs, as relators, filed the Complaint initiating this action against Defendants. Dkt. # 1.[5] After several extensions, the United States declined to intervene on December 12, 2025. See Dkt. # 27. Plaintiffs filed their FAC on March 10, 2026. *See* Dkt. # 45. On April 30, 2026, the Court issued an order granting Defendants' motion to dismiss the First Amended Complaint ("FAC") with leave to amend. Dkt. # 62 ("*MTD FAC O.*"). On May 22, 2026, Plaintiffs filed the SAC. *SAC.*

The SAC asserts six causes of action, each against all defendants: (I) Violation of the False Claims Act; (II) False Certification Fraud under the False Claims Act; (III) Implied False Certification; (IV) Accounting; (V) Whistleblower Retaliation under the False Claims Act; and (VI) Appointment of Receiver. *See id.* at 33−47.

In addition to equitable relief for an accounting and appointment of a receiver, *id.* at 47-48, Plaintiffs seek "all damages available under 31 U.S.C. § 3730(h) for retaliation, including double back pay, reinstatement where appropriate, and compensation for special damages," treble damages and civil penalties for each false claim submitted, the maximum

[5] Plaintiffs also sue Doe Defendants 1–10, alleging Doe Defendants are responsible for some or all of the acts alleged in the SAC. *See SAC* ¶ 3. Pursuant to the Court's standing order, "[a]ny "DOE" or fictitiously-named Defendant(s) who is not identified and served within 90 days after the case is filed shall be dismissed pursuant to Fed. R. Civ. P. 4(m)." Dkt. # 12 ¶ 1. Therefore, the Doe Defendants are dismissed from the case.

relator's share permitted by law, costs, expenses, attorney's fees, all other relief the Court deems appropriate, and punitive damages. *Id.* at 48−49.

On June 1, 2026, Plaintiffs filed an *ex parte* application seeking leave to file a third amended complaint. *See* Dkt. # 64. On June 5, 2026, the Court denied Plaintiffs' application. *See* Dkt. # 69. Also on June 5, 2026, Defendants filed the instant motions to dismiss and compel arbitration and to stay the case pending a decision on the motion to dismiss and compel.

II. Legal Standard

Federal Rule of Civil Procedure ("Rule") 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). Pleadings that are "verbose, confusing and conclusory" are subject to dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements[] do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity,

the pleader must state the false representations' time, place, and specific content. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). A pleader must "'identify the who, what, when, where, and how of the misconduct charged.'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). The allegations "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to adequately answer the fraud allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## III. Discussion

### A. False or Fraudulent Claims (Claims I–III)

The Court begins with the first three claims: (I) a general violation of the FCA, (II) false certification fraud under the FCA, and (III) implied false certification under the FCA. *Compl.* ¶¶ 57–83.

#### *i. Legal Standard*

An individual is liable under the False Claims Act if he or she "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). "A 'claim' includes direct requests for government payment as well as reimbursement requests made to the recipients of federal funds under a federal benefits program." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (citing 31 U.S.C. § 3729(b)(2)(A)). To bring a claim under the False Claims Act, one must show "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

"It is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA." *U.S. ex rel. Hopper v. Anton*, 91 F.3d

1261, 1265 (9th Cir. 1996). Although a relator need not "identify representative examples of false claims to support every allegation," *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), he must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted," *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019) (quotation omitted). A false claim or statement to the government is the "*sine qua non* of receipt of state funding." *Campie*, 862 F.3d at 899 (internal quotation marks and citation omitted).

*ii. Application*

*a. Pleading Fraud with Specificity*

"Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.' Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054−55 (9th Cir. 2011).

The SAC fails to allege a false claim because its allegations lack the specificity Rule 9(b) requires. Though the SAC identifies documents Defendants submitted to IHS, *see SAC* ¶¶ 42−43, 50, the SAC does not identify any particular false statement, representation, amount, or other information contained in those documents, *see id.* ¶¶ 42–50. The complaint instead broadly alleges that documents submitted in connection with the "Projects" contained misrepresentations regarding, among other things, personnel and contractor costs, fringe benefits, equipment, supplies, travel expenses, indirect costs, and other budget and periodic performance information. *See id*. The SAC states the "Projects" are those included in Schedule 1, a table listing funds received not only from IHS but from other federal sources from 2019 through 2026. *See id.* But the SAC does not identify any specific claim submitted to the government within Schedule 1, which documents contained the alleged misrepresentations, which statements or figures in those documents were false, why they were false, what was the correct information, or how any alleged misrepresentation rendered a particular submission false or fraudulent. Though the Ninth Circuit does not "require a relator to identify representative examples of false claims to support every allegation," or to allege "'all facts supporting each and every instance' of

billing submitted, . . . . Rule 9(b) still requires [plaintiffs] to plead the fraud with some level of specificity"—a level the complaint does not meet. *See Ebeid*, 616 F.3d at 998–99 (citations omitted).

Plaintiffs argue that they have identified sufficient transactions, parties, and amounts to satisfy Rule 9(b)'s pleading requirements. *Opp'n* at 10–11. For example, Plaintiffs argue the SAC alleges "[t]he manner and context of the over-stated amounts reported to IHS in an effort to artificially inflate the applicable budgets." *Opp'n* at 9. However, the SAC alleges only broad categories of misconduct from 2019 through 2026, without describing the circumstances of any alleged misrepresentation or explaining how those misrepresentations appeared in documents Defendants submitted to IHS in support of their funding requests. *See SAC* ¶¶ 42–50. For example, the SAC alleges that Craig-Corlew and UAIII "made material misrepresentations to IHS about the amounts, needs and intended use of the funds," "overstated personnel and contractor needs and costs," "included false statements and inflated amounts above the actual intended rates of pay," and requested funds from IHS "for a variety of fringe benefits, equipment, supplies, travel costs, indirect expenses[,] and other costs which were again over-stated, artificially inflated and not intended to be used for legitimate purposes." *Id.* ¶ 44. But Plaintiffs do not allege the intended rates of pay, the amounts actually submitted to IHS, or any comparison showing why the submitted amounts were inaccurate. Without those allegations, the Court cannot reasonably infer that Defendants submitted false claims to the government. *See Cafasso*, 637 F.3d at 1056 ("[T]o commit conduct actionable under the FCA, one must, in some way, falsely assert entitlement to obtain or retain government money or property.").

Nor does Schedule 1 provide the requisite detail. *See SAC* ¶¶ 42–50, Schedule 1. In dismissing the FAC, the Court found that Exhibit B, which Plaintiffs attached to the FAC and again include in the SAC, provided "only the award number, award title, 'action date,' and 'action amount,'" but lacked "any indication as to what Defendants submitted to the government." *See MTD FAC O.* at 7. Plaintiffs now allege that "[t]he foregoing Unlawful Conduct occurred on various dates during the pendency of each applicable Project as referenced in Schedule 1," *see SAC* ¶¶ 33–35, 37, and that "Defendants Hope Craig-Corlew and UAIII made material misrepresentations to IHS about the amounts, needs and intended use of the funds" for each of the programs and grants listed in Schedule 1, *see id.* ¶ 44. Schedule 1 identifies grants from 2019 through 2026 by "issue date," "funding FY [Fiscal Year]," "award number," "award title," "OPDIV," "action date," and "action amount." *See id.*, Schedule 1. But Schedule 1 does not identify any document

submitted to IHS, any statement contained in those documents, or any allegedly false representation. *See id.* Therefore, Schedule 1 still does not identify which documents Defendants submitted, what statements those documents contained, or which statements were allegedly false. As with Exhibit B in the FAC, Schedule 1 in the SAC identifies grants received by Defendants but does not identify the alleged fraudulent submissions. *See SAC,* Schedule 1. This does not meet the Rule 9(b) standard to plead with particularity.

Plaintiffs' reliance on *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997), to argue that "Rule 9(b) does not require that the complaint 'describe in detail a single specific transaction,'" does not warrant a different result. *See Opp'n* at 10. In *Cooper*, the Ninth Circuit rejected defendant's argument that the complaint was deficient because it failed to allege the "time, customer, amount, or other circumstances, of a single wrongful transaction of any type," since Rule 9(b) does not require "a specific number or a precise time frame." *See Cooper*, 137 F.3d at 626–27. However, the complaint in *Cooper* also identified "the dollar amounts of overstatements of revenues, net income, and earnings per share for the third and fourth quarters of 1993," *see id.* at 626; identified "who (eight of [Defendant's] customers), what (four types of improper revenue recognition), when (last two quarters of 1993 and first quarter of 1994), and where (reported in financial statements)," *see id.* at 627; and explained how the fraud was accomplished by alleging that the defendant inflated "its revenues by specific amounts, and by falsely claiming that its revenue recognition policy was stricter than it really was ('how')." *See id.* Thus, *Cooper* illustrates that a complaint need not plead every fraudulent transaction—but must still identify the "who, what, when, where, and how" of the alleged fraud with sufficient particularity.

Lastly, the SAC fails to identify the "who" involved in the alleged misconduct. *See, e.g.*, *United States v. Honeywell Int'l*, No. LA CV12 02214 JAK (JCGx), 2014 WL 12579803, at *3 n.5 (C.D. Cal. Jan. 24, 2014) ("Here, the FAC is deficient because it does not identify with particularity those who allegedly made knowingly fraudulent representations to the Government."). The SAC identifies Craig-Corlew as Chairwoman of UAIII, *see SAC* ¶ 47, but does not allege facts explaining how she personally participated in preparing, submitting, reviewing, or approving any specific false claim. The SAC also alleges Craig-Corlew "manufactured the excess amounts referred to above in her position and capacity as Chairwoman of Defendant UAIII" and that Defendants "collectively submitted the false and excess amounts to the Federal Government in connection with each of the projects listed on Schedule 1." *See id.* However, the SAC does not identify any

specific document that Ms. Craig-Corlew prepared or submitted, any specific statement attributable to her, or any specific action she took that caused the submission of a false claim. An individual defendant's "status as corporate officer, even sole corporate officer, is not sufficient to allege personal liability without more specific facts about [his or her] conduct." *See GS Holistic, LLC v. SF Hookah Palace Inc.*, No. 22-cv-07100-JSW, 2024 WL 3234055, at *2 (N.D. Cal. June 28, 2024). The SAC also fails to allege facts explaining how she used that position to misrepresent the information allegedly submitted to IHS. *See O'Hagin's, Inc. v. UBS AG*, No. SA CV 16-0716-DOC (JEMx), 2016 WL 11774033, at *14 (C.D. Cal. Oct. 11, 2016) (explaining that "[c]onclusory allegations that [defendants] directed affairs are insufficient). For these reasons, the SAC does not sufficiently plead that Craig-Corlew personally participated in submitting false claims.

Because the SAC does not plead how the challenged statements were false, identify why the figures and information contained in the "Projects" were overstated, or allege the amounts by which those figures were inflated, Plaintiffs have not pleaded falsity with the specificity required by Rule 9(b).

*b. Exclusive Knowledge*

Plaintiffs next argue that a lower standard of pleading is required where Defendants are the ones in sole possession of the documents necessary to support Plaintiffs' fraud allegations. *Opp'n* at 9−10. The SAC pleads numerous times that such information is within Defendants and HIS's sole possession. *See SAC* ¶¶ 26−28, 33−35, 37, 44, 54−56. The argument fails for two reasons.

First, while the Ninth Circuit recognizes that Rule 9(b)'s pleading requirements "may be relaxed with respect to matters within the opposing party's knowledge," since "plaintiffs cannot be expected to have personal knowledge of the relevant facts," Plaintiffs must still provide a factual basis supporting their allegations. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (explaining that "a plaintiff who makes allegations on information and belief must state the factual basis for the belief." (citations omitted)); *see also United States ex rel. Cericola v. Fannie Mae*, 529 F. Supp. 2d 1139, 1144 (C.D. Cal. 2007) ("While Rule 9(b) may not require a qui tam plaintiff to allege, in detail, all facts supporting each and every instance of a defendant's false claims, the complaint must, at a minimum, be specific enough to give a defendant notice of the particular misconduct which

is alleged to constitute the fraud charged so that it can defend against the charge and not just deny that it has done anything wrong." (citations and quotations omitted).

For example, in *Wool v. Tandem Computs., Inc.*, the Ninth Circuit held the complaint satisfied Rule 9(b) because it identified each alleged misrepresentation by its "content, date, and the document or announcement in which it appeared," specified "the exact dollar amount of each alleged overstatement," and explained "the manner in which such representations were false and misleading." 818 F.2d 1433, 1439–40 (9th Cir. 1987), superseded by statute on other grounds as stated in *Hockey v. Medhekar*, 30 F. Supp. 2d 1209, 1215 (N.D. Cal. 1998). Unlike the plaintiff in *Wool*, Plaintiffs do not identify the amounts allegedly overstated or how any alleged misrepresentation resulted in a false claim submitted to the government. *See generally SAC*; *see also Hopper*, 91 F.3d at 1266 ("[T]he [FCA] attaches liability, not to underlying fraudulent activity, but to the 'claim for payment.'" (citations omitted)). Because Plaintiffs have not alleged the factual basis supporting their fraud allegations with particularity, they cannot invoke the exclusive-possession exception to excuse pleading deficiencies. *See Ebeid*, 616 F.3d at 999 (declining to apply the relaxed pleading standard for information solely within the defendant's possession because, "[t]o jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government.").

Second, Plaintiff's suggestion that the knowledge is exclusively within Defendants' possession is not plausible. Plaintiffs possess sufficient knowledge to allege that every submission from Defendants to IHS contained misrepresentations. *See SAC* ¶¶ 44 (alleging Craig-Corlew and UAIII made material misrepresentations to IHS in "each such Program and grant illustrated on Schedule 1"), 52 (alleging the "Scheme" of falsifying documents, inflating costs, obtaining grants exceeding the costs of services provided, and generating and retaining excess funds became Defendants' "standard operating procedure" in connection with each Project listed in Schedule 1). Therefore, Plaintiffs should also be able to provide sufficient details regarding at least some of those submissions, including examples of specific documents containing misrepresentations, the statements or amounts included in those documents, and facts showing why those statements were inaccurate. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("'[Q]ui tam suits are meant to encourage insiders privy to a fraud on the government to blow the whistle on the crime.' Because 'insiders privy to a fraud on the government' should have adequate knowledge of

the wrongdoing at issue, such insiders should be able to comply with Rule 9(b).” (citations omitted)). For example, in *Godecke*, the Ninth Circuit found the complaint’s allegations sufficient where the plaintiff explained the basis of her knowledge and provided fifteen representative examples of allegedly false claims. 937 F.3d at 1207−08. The plaintiff in *Godecke* alleged she learned of the fraud “[b]ased on reviews of reports and conversations with customer service representatives and [defendant’s] management,” *see id.* at 1207, and provided fifteen representative examples of allegedly false claims submitted for reimbursement, *see id.* Here, Plaintiffs identify neither the source of their knowledge nor any representative examples of the allegedly false submissions. *See SAC* ¶¶ 42–50 (broadly alleging submissions associated with all “Projects” contained misrepresentations regarding amounts, needs, and intended uses of funds).

For these reasons, the Court finds no basis to relax Rule 9(b)’s pleading requirements. Plaintiffs’ failure to identify specific false claims prevents Defendants from understanding the precise allegations against them and preparing a defense, which is precisely why Rule 9(b) requires allegations of fraud to be pled with particularity. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (explaining that Rule 9(b)’s purpose is to ensure that “allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.”) (citation omitted).

*c. Implied certification*

Plaintiffs’ implied certification theory supporting Claim III fails for the same reason. The theory of implied certification is based on the premise that “the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment.” *See Ebeid*, 616 F.3d at 996 (quotation marks and citation omitted). But an implied certification theory does not eliminate the FCA’s requirement that Plaintiffs identify a false claim submitted to the government. *See id.* (“Nonetheless, even under this theory of implied false certification [Plaintiff] fails to plead fraud with sufficient particularity to satisfy the pleading standard under Federal Rule of Civil Procedure 9(b).”).

Plaintiffs do not identify any particular claim submitted to IHS, specific requirement that Defendants allegedly violated, or specific representation or omission that rendered a

particular request for payment false or misleading. *See generally SAC*. Instead, Plaintiffs rely on generalized allegations that Defendants overstated costs and budget information across the "Projects." *Id.* Because Plaintiffs fail to identify a particular false claim or explain how any alleged misrepresentation or omission rendered a specific claim misleading, the implied certification theory also fails under Rule 9(b).

*d. Conclusion*

Because the SAC fails to plead a false claim or fraudulent course of conduct with the particularity required by Rule 9(b), the Court need not reach the other elements under the False Claims Act. *See U.S. ex rel. Haw. v. Haw. Pac. Health*, 409 Fed. Appx. 133, 134 (9th Cir. 2010) ("Because Relators have failed to establish the existence of any false claim or fraudulent conduct, their claims under the FCA must fail." (citing *Hendow*, 461 F.3d at 1171, 1174)). The Motion is **GRANTED** as to Claims (I) Violation of the False Claims Act; (II) False Certification Fraud under the False Claims Act; and (III) Implied False Certification.

B. Retaliation Claim

The SAC asserts as Claim V whistleblower retaliation under the FCA. *SAC* ¶¶ 92–98.

*i. Legal Standard*

"The False Claims Act protects 'whistle blowers' from retaliation by their employers." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 845 (9th Cir. 2002). An employee is entitled to relief if that employee is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" based on their whistleblowing conduct. *See* 31 U.S.C. § 3730(h)(1). An employee must prove three elements to prevail on a False Claims Act retaliation claim: "(1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity." *Moore*, 275 F.3d at 845.

A plaintiff alleging a FCA retaliation claim need not show that the defendant actually submitted a false claim to the government, only that she reasonably suspected as much. *See Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008). "As such, the heightened pleading standard for fraud claims does not apply, and the standard employed is established by Rule 12(b)(6)." *United States v. Grp. Health Co-op*., No. CIV. C09-603 RSM, 2011 WL 814261, at *3 (W.D. Wash. Mar. 3, 2011).

*ii. Application*

The Court previously dismissed the whistleblower retaliation claim, identified deficiencies in the allegations, and afforded Plaintiffs an opportunity to amend. *MTD FAC O.* at 8–9. Plaintiffs declined the opportunity and did not amend their supporting allegations. *See SAC* ¶¶ 92–98. Nonetheless, Plaintiffs assert that the SAC sufficiently pleads whistleblower retaliation, because it "states that each Relator Plaintiff reported the Scheme and numerous alleged violations of the FCA." *Opp'n* at 17 (citing *SAC* ¶¶ 1(a), 1(c), 7, 14–15, 93–98).

The cited allegations remain deficient. The SAC alleges, "Each Relator-Plaintiff engaged in protected activity under the False Claims Act by investigating and reporting Defendant's misuse of federal funds. . . . Defendants began a process of harassing each Relator-Plaintiff and ultimately wrongfully and tortiously terminating (or constructively terminating) each." *SAC* ¶¶ 93–94. It also alleges, "Each such Relator-Plaintiff complained internally and reported externally the conduct alleged herein which is violative of the False Claims Act. Each such Relator-Plaintiff was subsequently terminated in retaliation for bringing the unlawful conduct to the attention of the Defendants and otherwise." *Id.* ¶ 1(a).

Allegations that each plaintiff "engaged in protected activity," and that all defendants "wrongfully and tortiously terminat[ed]" each plaintiff, are "threadbare recitals" of elements of a cause of action that the Supreme Court has found does not satisfy Rule 8's pleading requirements. *See Iqbal*, 556 U.S. at 678 (stating Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

The allegations also improperly lump together the facts for all plaintiffs. The Ninth Circuit has held, when multiple plaintiffs assert claims arising out of separate transactions

or occurrences, Rule 8 requires "each plaintiff [to] plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. L.A. Cnty*., 216 F.3d 837, 840 (9th Cir. 2000). The SAC pleads no facts to suggest all plaintiffs engaged in the alleged protected activity in the same transaction or occurrence, and indeed, the SAC lacks any facts as to the actions of Alton and Koko. *See generally SAC*. Accordingly, the SAC does not plead that Alton and Koko engaged in protected activity under the False Claims Act.

As to Ischomer-Aazami, as the Court noted in its prior order, the only specific reporting alleged in the SAC is that Ishcomer-Aazami sent a letter to the UAIII Board on September 6, 2024, two days after she ceased working as Acting COO of UAIII. *See MTD FAC O.* at 9; *SAC* ¶¶ 14-15, Ex. A. The SAC still fails to identify any retaliatory act that Defendants took after that date, nor any other reporting by Ishcomer-Aazami before September 4, 2024. *See generally SAC.* Without allegations as to what retaliatory actions Defendants took against Ishcomer-Aazami (or Alton, or Koko) during the course of her employment, Plaintiffs cannot maintain a claim for retaliation under the False Claims Act. *Moore*, 275 F.3d at 845.

For these reasons, the Motion is **GRANTED** as to Claim V for retaliation.

C. Requests for Equitable Relief

Plaintiffs' requests for an accounting and the appointment of a receiver (Claims IV and VI) are also dismissed, because they are untethered to a surviving claim. The Court repeats the legal standard and analysis in its prior order. *See MTD FAC O.* at 10–11.

*i. Accounting*

"A request for a legal accounting must be tethered to relevant actionable claims." *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009). Here, "[b]ecause each of Plaintiff[s'] substantive claims for relief are subject to dismissal, Plaintiff[s] ha[ve] not anchored [their] request to any viable claims and [their] accounting claim cannot survive." *See, e.g.*, *Rodriguez v. Bank of N.Y. Mellon*, No. 13cv1830-GPC-BLM, 2014 WL 229274, at *12 (S.D. Cal. Jan. 17, 2014) (internal quotation marks and citation omitted)). Thus the Motion is **GRANTED** as to Claim IV for an accounting.

*ii. Appointment of Receiver*

The same is true of Plaintiffs' request for a receiver. Though there is "no precise formula for determining when a receiver may be appointed," *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009), there are several factors a court may consider. Those include:

> 1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1259 (D. Or. 2009) (quotations and brackets omitted).

Plaintiffs have not established any of these factors exist. The Court has already determined that the SAC does not state a valid claim. *See supra* Section I.C.i. The Court likewise cannot conclude that there is fraudulent conduct or the probability of fraudulent conduct. The SAC's allegations that "Defendants will continue to dissipate federal grant funds," see *SAC* at 46–47, do not plausibly allege the property is in imminent danger of being lost, or that legal remedies would be inadequate. *See generally SAC*. The SAC does not plead, and Plaintiffs do not explain, why the harm of failing to appoint a receiver would outweigh the injury to Defendants, nor do Plaintiffs clearly define their risk of ongoing injury. *See generally id.*; *MTD Opp'n*. And given the Court's dismissal of each claim in the SAC, Plaintiffs have not shown they are likely to succeed in the action.

"Appointing a receiver is an extraordinary remedy that should not be granted unless the party seeking the receiver has met its burden of showing that a receiver is necessary." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1262 (citing *Canada Life*, 563 F.3d at 845). Because Plaintiffs fail to carry their burden, the Motion is **GRANTED** as to Claim VI seeking an appointment of a receiver.

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss all claims.

D. Denial of Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). "Although leave to amend is often freely given when justice so requires, a district court may deny leave to amend where a plaintiff has '[r]epeated[ly] fail[ed] to cure deficiencies by amendments previously allowed.'" *Dutciuc v. Meritage Homes of Arizona, Inc.*, 462 F. App'x 658, 660 (9th Cir. 2011) (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988)).

Plaintiffs have filed three complaints. The Court previously identified the defects in the FAC's allegations, including the absence of identified false claims and the failure to plead fraud with particularity. *MTD FAC O.* Despite that guidance, the SAC does not remedy those deficiencies. The Court concludes that further amendment would be futile. *See Freeney v. Bank of Am. Corp.*, No. CV 15-2376-JGB-PJWX, 2016 WL 5897773, at *20 (C.D. Cal. Aug. 4, 2016) (denying request for leave to amend where the court had already issued "a detailed opinion addressing the merits of [p]laintiffs' claims," but the amended complaint "did not remedy any of the deficiencies addressed in the [c]ourt's order"). Accordingly, the Motion is granted **WITHOUT LEAVE TO AMEND**.

IV. Motion to Compel

Defendants also ask the Court to compel Plaintiffs' retaliation claim to arbitration. *See Mot.* at 22–24. Because the Court has already dismissed Plaintiffs' retaliation claim, Defendants' request to compel arbitration is moot. *See, e.g.*, *Lansmont Corp. v. SPX Corp.*, No. 5:10-cv-05860 EJD (HRL), 2011 WL 2463281, at *6 n.5 (N.D. Cal. June 20, 2011) ("In light of the court's ruling on the companion motion to dismiss, [Defendant's] request to compel arbitration as to those claims is moot at this time."); *Dell Inc. v. Alvarez*, No. C06-05928 JSW, 2007 WL 608116, at *3 n.3 (N.D. Cal. Feb. 23, 2007) ("Because the Court has ordered that the case be dismissed, [Defendant's] motion to compel arbitration

is moot and need not be addressed."). Thus, the Court **DENIES AS MOOT** Defendants' motion to compel arbitration.

V. Motion to Stay

Defendants ask the Court to stay discovery while Defendants' motions to dismiss and compel are pending. *See generally Mot. Stay*. Because the Court has ruled on Defendants' motions to dismiss and compel, Defendants' motion to stay is moot. *See, e.g.*, *Constr. Laborers Pension Tr. v. Meketa Inv. Grp., Inc.*, No. 2:23-cv-07726-CAS (PVCx), 2024 WL 1656261, at *7 (C.D. Cal. Apr. 15, 2024). Thus, the Court **DENIES AS MOOT** Defendants' motion to stay.

VI. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND** and **DENIES AS MOOT** Defendants' motions to compel arbitration and stay the case. The Clerk of Court is directed to **CLOSE** this case.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ